**Juan C. Chavez**, OSB #136428
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

    Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| TYLER SCOTT,<br><br>    Plaintiff,<br><br>v.<br><br>CLACKAMAS COUNTY; NICOLAS JOHNSON; JENNIFER FREEMAN; TYLER MEITHOF; ARTHUR JOHNSON; CHRIS JIMENEZ; EMILY RADMER; MAGALI QUINTERO; and JOHN DOES 1-10.<br><br>    Defendants. | Case No. 3:25-cv-00706-SI<br><br>SECOND AMENDED COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983); Battery (State Tort)<br><br>JURY TRIAL DEMANDED |

    This is a civil rights and state tort law action against the above-named parties for the unconstitutional beating of the Plaintiff, Tyler Scott. Plaintiff was taken into the custody of the Clackamas County Jail on or about June 30, 2023. Plaintiff is a pretrial detainee. On that day, immediately after entering CCJ's custody, Defendants unnecessarily forced Plaintiff into a restraint chair, beating him in the process. Throughout this ordeal, Defendants told him, "This is what you get for shooting cops." Defendants then chained Plaintiff to the floor of his cell. Defendants meted out punishment without due process, subverting the constitutional order and

violating Plaintiff's rights. Police departments are not arbiters of guilt and cannot act like a criminal cartel seeking retribution. Plaintiff seeks accountability for these acts.

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(a)(3), (4). The court has supplemental jurisdiction over the State tort claims pursuant to 28 U.S. Code § 1367(a).

## VENUE

2. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in Oregon City, Clackamas County, Oregon.

## PARTIES

3. Tyler Scott, Plaintiff, is a citizen of the State of Oregon.

4. Defendant Clackamas County (hereinafter, "County") is a political subdivision of the State of Oregon with the capacity to sue and be sued. The County runs the Clackamas County Sheriff's Office (hereinafter, "CCSO"). CCSO runs the Clackamas County Jail (hereinafter, "CCJ").

5. Defendant Nicolas Johnson was then a Sergeant, and now Lieutenant, with the CCSO. At all relevant times, Defendant Sgt. Johnson was acting under color of law. He is sued in his individual capacity.

6. Defendant Jennifer Freeman was then a Lieutenant, and now Captain, with the CCSO. At all relevant times, Defendant Freeman was acting under color of law. She is sued in her individual capacity.

7.     Defendant Tyler Meithof is a Sheriff Deputy of CCSO. At all relevant times, Defendant Meithof was acting under color of law. He is sued in his individual capacity.

8.     Defendant Arthur Johnson is a Sheriff Deputy of CCSO. At all relevant times, Defendant Dpty. Johnson was acting under color of law. He is sued in his individual capacity.

9.     Defendant Chris Jimenez is a Sheriff Deputy of CCSO. At all relevant times, Defendant Jimenez was acting under color of law. He is sued in his individual capacity.

10.    Defendant Emily Radmer was then a Sheriff Deputy, now Sergeant, of CCSO. At all relevant times, Defendant Radmer was acting under color of law. She is sued in her individual capacity.

11.    Defendant Magali Quintero is a Sheriff Deputy of CCSO. At all relevant times, Defendant Quintero was acting under color of law. She is sued in her individual capacity.

12.    Plaintiff does not know the names of Defendants John Does 1-10, and thus sues them under fictitious names. John Does 1-10 are any CCSO deputies who exercised command over, conspired with, aided and abetted subordinates, and/or directly or indirectly participated in Plaintiff's deprivation of civil rights as hereinafter alleged.

## FACTUAL ALLEGATIONS

12.    At all times relevant to this case, Plaintiff Tyler Scott was in the custody of CCSO at the CCJ.

13.    On June 30, 2023, Plaintiff Scott was booked into CCJ for allegedly shooting at police officers.

14.    Plaintiff Scott remained calm and cooperative with the arresting officers as he was led into the CCJ booking area.

15.     Within the booking area, Defendant Sgt. Johnson began accosting Plaintiff Scott. Plaintiff Scott was answering questions asked by the booking deputy. Defendant Sgt. Johnson demanded that Plaintiff Scott to "comply with the officer's orders," which he was despite receiving conflicting orders from the officers—*e.g.*, "put your hands on the wall" and "take off your shoes." Defendant Sgt. Johnson then Plaintiff Scott that he "knew what he did," referring to the allegations made against him.

16.     Defendant Sgt. Johnson and Defendant Dpty. Johnson then lead Plaintiff Scott to a booking cell. Plaintiff Scott was calm and compliant while walking to the cell.

17.     Defendant Sgt. Johnson told Defendant Dpty. Johnson that Defendant Freeman had ordered Plaintiff Scott to be placed on suicide watch.

18.     At no point in these interactions did Plaintiff Scott indicate he had suicidal ideation.

19.     Upon information and belief, Defendant Sgt. Johnson used the false pretense of placing Plaintiff Scott into suicide watch to justify the use of a restraint chair.

20.     After being placed in the booking cell, Defendants Sgt. Johnson and Dpty. Johnson brought Plaintiff Scott back into the hallway where a restraint chair had been brought out. Defendants Sgt. Johnson, Dpty. Johnson, Meithof, Radmer, Jimenez, Quintero, and Does 1-10 began to forcibly place Plaintiff Scott into a restraint chair.

21.     While naturally tense with anxiety, Plaintiff Scott was not fighting the officers placing him into the chair. Plaintiff Scott then felt strap come over his head and pulled hard across his neck. The force of the strap was so strong it knocked him back in the chair and the strap began to strangle him. Plaintiff Scott then feared for his life.

22. As the Defendants began to further restrain him, they began pummeling him with punches, jabs, kneeings, and kicks. Plaintiff Scott heard the Defendants say, "This is what happens when you shoot cops," while doing so.

23. After assaulting Plaintiff Scott in the restraint chair, Defendants took him out of chair and placed him in a "six-point restraint system" where he was cuffed to the ground, arms and legs spread apart. This felt torturous to Plaintiff Scott. While he was being restrained to the floor, Defendant Sgt. Scott stood to the side of the cell while saying things like "Not so tough now" and "This is what you get for shooting cops."

24. Defendants left Plaintiff Scott restrained in this position for over three hours.

25. The cuffs were so tight his hands turned purple and lost feeling. After about 30 minutes of being restrained with too tight cuffs, Defendant Dpty. Johnson entered his cell and slammed Plaintiff Scott to the ground with a shield while he was still bound to the ground. At that point Defendants finally loosened the cuffs upon Medical's request.

26. Plaintiff was kept in booking for eight days.

27. Plaintiff filed a timely Tort Claim Notice.

**Claim 1: Fourteenth Amendment – Unlawful Use of Force – Individual Liability
(42 U.S.C. § 1983)**

28. Plaintiff realleges and incorporates Paragraphs 1 through 27.

29. It is clearly established law that an officer may not use force that, in light of the circumstances and as perceivable by a reasonable, objective officer, is excessive, unreasonable, and unnecessary.

30. At all material times, the Defendants named in their individual capacity were in possession of facts that would cause a reasonable law enforcement officer to believe that using force on a restrained individual, like Plaintiff, would violate the law.

31.     In taking the actions described above, including but not limited to using a false pretense to place Plaintiff Scott in a restraint chair, beating a restrained pretrial detainee, using a "six-point restraint" on Plaintiff for an extended period of time, and using too tight of cuffs, the Defendants named in their individual capacity intentionally violated Plaintiff's right to be free from excessive force, guaranteed by the Fourteenth Amendment to the United States Constitution.

32.     The actions of the Defendants named in their individual capacity, as described in this Second Amended Complaint, were embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiff Scott. As a result of said intentional conduct, Plaintiff Scott is entitled to punitive damages against the Defendants named in their individual capacity in an amount sufficient to punish them and to deter others from like conduct.

33.     The unreasonable force of Plaintiff Scott was the direct and proximate cause of his bodily injury, pain, suffering, loss of liberty, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Plaintiff is entitled to all of his damages in an amount to be ascertained according to proof at trial.

### Claim 2: Fourteenth Amendment – Due Process – Individual Liability
### (42 U.S.C. § 1983)

34.     Plaintiff realleges paragraphs 1 through 27.

35.     It is clearly established law that an officer may not punish a pretrial detainee without a trial. Doing so would "shock the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952).

36.     The Defendants named in their individual capacity acted for the purpose of punishing Plaintiff Scott for a crime no court of law had found him guilty of, as evinced by their refrain of "this is what you get for shooting cops."

37. The actions of the Defendants named in their individual capacity, as described in this Second Amended Complaint, were embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiff Scott. As a result of said intentional conduct, Plaintiff Scott is entitled to punitive damages against the Defendants named in their individual capacity in an amount sufficient to punish them and to deter others from like conduct.

38. The unreasonable deprivation of his due process was the direct and proximate cause of Plaintiff Scott's bodily injury, pain, suffering, loss of liberty, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Plaintiff is entitled to all of his damages in an amount to be ascertained according to proof at trial.

### Claim 3: State Tort – Battery – *Respondeat Superior*

39. Plaintiff realleges paragraphs 1 through 27.

40. As alleged above, Defendant Clackamas County's agents intentionally engaged in harmful and offensive contact with Plaintiff Scott.

41. This intentional conduct harmed Plaintiff Scott.

42. This battery was the direct and proximate cause of Plaintiff Scott's bodily injury, pain, suffering, loss of liberty, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Plaintiff is entitled to all of his damages in an amount to be ascertained according to proof at trial.

### REASONABLE ATTORNEY'S FEES AND COSTS

43. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. § 1983.

44. Plaintiffs request that the Court grant a reasonable attorney's fee in this action.

///

**DEMAND FOR JURY TRIAL**

45. For all claims alleged in this Complaint, Plaintiff demand a jury trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

    A.    For non-economic damages in an amount to be determined at trial;

    B.    For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988; and

    C.    Such other relief as the court deems just and proper.

DATE: June 27, 2025.

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB #136428
Oregon Justice Resource Center
Of Attorneys for Plaintiff
*LEAD ATTORNEY*